UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANDREW J. CHERRONE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00232-JRS-DLP |
| | ) | |
| JERRY SNYDER, | ) | |
| RANDALL PURCELL, | ) | |
| RICHARD BROWN, | ) | |
| FRANK LITTLEJOHN, | ) | |
| KEVIN GILLMORE, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Defendants' Post Judgment Motions**

A four-day jury trial was held in September 2020. The jury returned a verdict in favor of Plaintiff Andrew Cherrone on his due process claim against each Defendant and awarded punitive damages totaling $310,000.

Following the entry of the final judgment, Defendants filed two motions disputing the punitive damages awards determined by the jury. First, Defendants filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), in which they argue there was insufficient evidence to support a punitive damages instruction and that the punitive damages award should be vacated. Second, Defendants filed a motion to alter or amend the judgment by reducing damages pursuant to Rule 59 of the Federal Rules of Civil Procedure.

For the reasons explained below, there was sufficient evidence to support the jury's verdict, the punitive damages award was reasonable, and Defendants' post-judgment motions, dkts. [267] and [268], are **denied.**

## I. Background

Mr. Cherrone is an inmate in the custody of the Indiana Department of Correction. He alleged and ultimately convinced the jury that Defendants subjected him to a prolonged period of administrative segregation in Department-Wide Administrative Restrictive Status Housing in violation of his due process rights.

"The Supreme Court held in *Hewitt* [*v. Helms*, 459 U.S. 460 (1983),] that the Due Process Clause mandates that prison officials periodically review whether an inmate placed in administrative segregation continues to pose a threat." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). Inmates placed in solitary confinement are entitled to "an informal and nonadversary periodic review (the frequency of which is committed to the discretion of the prison officials) that keeps administrative segregation from becoming a pretext for indefinite confinement." *Id*. at 525 (internal quotation omitted).

From March 2015 until March 2019, Mr. Cherrone was in administrative segregation at Wabash Valley Correctional Facility ("Wabash"). While in administrative segregation, Mr. Cherrone was confined to a single-man cell for 23 hours a day. The light was on constantly and all of his meals were consumed alone in his cell. The conditions on administrative segregation are so restrictive they implicate a liberty interest. Dkt. 229 (stipulations). During this four-year period, Defendants denied Mr. Cherrone meaningful and periodic reviews of his continued placement on administrative segregation. More specifically, having heard all the evidence regarding the review process (or lack thereof) and each Defendant's role in that process, the jury found in favor of Mr. Cherrone and awarded significant punitive damages. The jury awarded $1.00 in nominal damages; $120,000 in punitive damages against Defendant Brown; $60,000 in punitive damages against Defendant Snyder; $90,000 in punitive damages against Defendant Littlejohn; $30,000 in

punitive damages against Defendant Purcell; and $10,000 in punitive damages against Defendant Gillmore.

## II. Rule 50(b) Motion

At the close of all the evidence, the parties made oral Rule 50(a) motions for judgment as a matter of law. "Rule 50(a) of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011) (quoting Fed. R. Civ. P. 50(a)). The court denied Defendants' motion seeking dismissal of the punitive damages instruction. Dkt. 255. Accordingly, the jury was instructed in relevant part:

> Plaintiff must prove by a preponderance of the evidence that punitive damages should be assessed against Defendants. You may assess punitive damages only if you find that Defendants' conduct was malicious or in reckless disregard of Plaintiff's rights. Conduct is malicious if it is accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff. Conduct is in reckless disregard of Plaintiff's rights if, under the circumstances, Defendants simply did not care about Plaintiff's rights.

Dkt. 255-1 at p. 23. Neither party argues that there was an error in the jury instructions.

Defendants have now renewed their motion under Rule 50(b), asking this Court to vacate the jury's punitive damages award and arguing that there was insufficient evidence to support the verdict. "'A party must move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) and renew the motion under Rule 50(b) after the jury's verdict if the party wishes to preserve a sufficiency of the evidence challenge to a civil verdict.'" *Rexing Quality Eggs v. Rembrandt Enterprises, Inc.*, 996 F.3d 354, 369 (7th Cir. 2021) (quoting *Stegall v. Saul*, 943 F.3d 1124, 1127 (7th Cir. 2019)).

3

Defendants argue that in the absence of an evidentiary basis to support this jury instruction, the punitive damages award should be vacated. Dkt. 267 at p. 3. Mr. Cherrone disagrees and argues that the punitive damages award should remain as found by the jury. He argues that the evidence taken in the light most favorable to him reflects that Defendants acted in reckless disregard of his rights. Specifically, Defendants failed to conduct meaningful periodic reviews of his placement and, as a result, his placement in solitary confinement continued unnecessarily for four years.

The Court views the evidence in the light most favorable to the prevailing party to determine whether it supports the jury's verdict. *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1082 (7th Cir. 2019); *Tart v. Illinois Power Co.*, 366 F.3d 461, 463 (7th Cir. 2004).

The jury heard testimony that Defendants knew administrative segregation is an extreme form of punishment that can exact a severe physical and mental toll. In addition, there was testimony that Defendants understood that they were required to provide periodic, meaningful reviews so Mr. Cherrone was not unduly kept in administrative segregation.

Each Defendant provided testimony upon which the jury could conclude that he intentionally kept Mr. Cherrone in administrative segregation for years without a meaningful review.

*A. Deputy Warden Gillmore*

Deputy Warden Gillmore was the head of prison programming and responsible for reviewing Mr. Cherrone's placement in administrative segregation during two classification appeals. Mr. Gillmore testified that the purpose of the classification appeal was to provide a layer of meaningful review. Defendants argue that there is "no evidentiary basis to suggest that these denials were malicious or that Defendant Gillmore 'simply did not care about Plaintiff's rights.'" Dkt. 267 at p.3. However, the testimony at trial showed that Mr. Gillmore's appeal review was

virtually nonexistent, taking just 5 to 10 minutes. In addition, one basis for the denial of an appeal was the fact that Mr. Cherrone's placement had been reviewed every 30 days. Mr. Gillmore gave this testimony even though the 30-day review process was a sham that did not consist of any review at all. Indeed, Mr. Cherrone did not even receive the 30-day sheet of paper or letter in his packet for the first 10 months in administrative segregation. Mr. Gillmore not only shirked his responsibilities in reviewing the classification appeal, but he also failed to state why Mr. Cherrone's request for release was being denied. He made no effort to help Mr. Cherrone get access to programming and allowed this lack of programming to serve as a pretext for keeping Mr. Cherrone in administrative segregation.

There is no basis to conclude that the jury was unreasonable in finding that Mr. Gillmore did not care about Mr. Cherrone's due process rights. Indeed, the jury award itself reflects that the jury carefully considered Mr. Gillmore's culpability when they appropriately assessed only $10,000 in damages against him, compared to the $120,000 in damages against Warden Brown.

*B. Warden Brown, Mr. Snyder, Mr. Littlejohn, and Mr. Purcell*

Next, Defendants argue that because there was evidence that Warden Brown, Mr. Snyder, Mr. Littlejohn, and Mr. Purcell reviewed Mr. Cherrone for release from administrative segregation on six occasions over the course of four years they cannot be liable for violating his due process rights.

In response, Plaintiff argues that the jury had sufficient evidence to conclude that the six reviews he received were unconstitutional because they were neither periodic nor meaningful. Further, there was evidence from which to conclude that the reviews were conducted maliciously or with reckless disregard of Mr. Cherrone's rights.

Plaintiff's position is persuasive. The jury heard evidence that a paper trail was created every 30 days to document a review process that never took place. In addition, the jury heard evidence that administrative reviews were only done at Mr. Cherrone's insistence, and even then without any regularity. Thus, Mr. Cherrone only received six reviews over four years.

The evidence viewed in the light most favorable to Mr. Cherrone reflects that Defendants kept him in solitary confinement for four years because they wanted to punish him for a sexual assault he never committed and for a staff assault that had already been punished. Defendants all testified that they made no effort to speak to Mr. Cherrone, review his case, understand why he was there, or learn what rehabilitative efforts he had made.

The jury heard evidence that during the administrative review process, Mr. Cherrone's reviews contained cherry-picked and misleading information from his questionnaire that was then relied on by the review committee in denying his request to move out of administrative segregation. For example, Defendants testified that their primary reason for denying release for the first five reviews was lack of programming. But the evidence reflects that the Indiana Department of Correction has not adopted any rules interpreting or relating to the requirement that inmates participate in programming. Dkt. 255-1 at p. 6. Instead, participation in programming is voluntary and is not a requirement for re-classification or transfer out of segregation. *Id.* Nor does participation in programming guarantee re-classification into general population. *Id.*

In addition, the evidence viewed in the light most favorable to Mr. Cherrone reflects that Defendants' ignored Mr. Cherrone's desires to better himself; they ignored his long periods of time that were conduct-free; and they ignored the fact that several of his reviews listed incorrect and false allegations from his history. Specifically, the jury heard that the first several reviews contained an error reporting that Mr. Cherrone was convicted in a prison disciplinary proceeding

6

of a "nonconsensual sex act against staff," even though Defendant Brown testified that he told a Federal Court several years prior that he had corrected that error.

The collective evidence taken in the light most favorable to Plaintiff is that Defendants knew they were obligated to provide a meaningful review of Mr. Cherrone's placement. Instead of actually providing meaningful review, they created paperwork to make it look like they had done so. Based on this evidence, it was reasonable for the jury to conclude that Defendants simply did not care about Mr. Cherrone's right to receive a periodic and meaningful review of his placement in administrative segregation.

Accordingly, Defendants' Rule 50(b) motion seeking to vacate the punitive damages award, dkt [267], is **denied.**

### III. Rule 59 Motion

As previously stated, the jury awarded Mr. Cherrone one dollar in nominal damages and $310,000 in punitive damages. Defendants have filed a Rule 59 motion to alter or amend the Judgment by reducing the damages awarded by the jury. In doing so Defendants argue that the punitive damages awarded to Mr. Cherrone exceed constitutional limits. Dkt. 273, citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575–85 (1996).

"The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. . . . To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *State Farm*, 538 U.S. at 416–17. The "constitutional limit of a punitive damage award is a question of law not within the province of the jury." *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1092 (7th Cir. 2019).

Like the Seventh Circuit in *Saccameno,* this Court will address whether the punitive damages award exceeds constitutional limits because this is the issue briefed by the parties. The parties are reminded, however, that "the Constitution is not the most relevant limit to a federal court when assessing punitive damages, as it comes into play 'only after the assessment has been tested against statutory and common-law principles.'" *Id.* at 1086 (7th Cir. 2019) (quoting *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000)).

The Supreme Court has "instructed courts reviewing punitive damages to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418. Each of these guideposts is addressed below.

*A. Degree of Reprehensibility of Misconduct*

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S., at 575.

The Supreme Court has "instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Gore,* 517 U.S. at 576–577. "[P]unitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.* at 575.

In this case the harm was the result of the conditions of Mr. Cherrone's long-term placement in administrative segregation. The harm here was not economic, instead it was the personal suffering Mr. Cherrone experienced from spending 23 hours a day alone in a cell without hope of release for four years. Defendants' conduct reflected a reckless disregard to Mr. Cherrone's mental health. For example, the Defendants understood that long term placement in administrative segregation can have very severe mental impacts on individual prisoners. And as to Mr. Cherrone specifically, Warden Brown testified that Mr. Cherrone was kept in solitary confinement so long that he needed transitional programing before returning to general population. In addition, Mr. Cherrone was repeatedly falsely accused of sexual assault, and Defendant Warden Brown refused to correct his record despite representing to the Court that the correction had been made. In this case, Mr. Cherrone was not financially vulnerable, but he was personally vulnerable as a prisoner in the physical custody or control of the defendants. The conduct was not an isolated incident but occurred over the course of years. Finally, there was no evidence introduced that the harm was the result of an accident.

These factors reflect that Defendant's conduct was sufficiently reprehensible to support the jury's punitive damages award. The jury's verdict reflects that they considered each individual's conduct in assessing punitive damages. For example, $120,000 in punitive damages was assessed against Defendant Brown, while only $10,000 in punitive damages was assessed against Defendant Gillmore. Further, given the nominal damages awarded, the imposition of punitive damages was necessary to achieve punishment and deterrence.

*B. Disparity between the Harm Suffered by Plaintiff and the Punitive Damages Award*

The Supreme Court has declined "to impose a bright-line ratio which a punitive damages award cannot exceed." *State Farm,* 538 U.S. at 425. However, it has noted "that, in practice, few

awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* "Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages." *Id.* (internal quotations omitted). "In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426.

Defendants argue that nominal damages of $1 were awarded in this case and that a ratio of $310,000 (punitive damages) to 1 (nominal damages) is grossly excessive. In response, Plaintiff argues that the Seventh Circuit has repeatedly held that punitive-damages awards "are not conditioned upon the presence of compensatory damages," and that punitive damages in this case were not grossly excessive. Dkt. 271 at 4 (quoting *Sommerfield v. Knasiak*, 967 F.3d 617, 624 (7th Cir. 2020).

No compensatory damages were awarded in this case because the jury determined that Mr. Cherrone did not suffer any physical injury. As a result of this determination, he was prohibited under the Prison Litigation Reform Act from recovering compensatory damages for any mental or emotional injury. 42 U.S.C. § 1983 U.S.C.A. § 1997e(e); *Pearson v. Welborn*, 471 F.3d 732, 744–45 (7th Cir. 2006) (rejecting claim for compensatory damages based on placement with more onerous conditions of confinement as barred by the Prison Litigation Reform Act); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) ("We agree that, absent a showing of physical injury, § 1997e(e) would bar a prisoner's recovery of compensatory damages for mental and emotional injury."); Dkt. 255-1 (Final Instruction No. 19).

After the jury returned its verdict, it was given a special interrogatory. Dkt. 259. The jury was directed to "determine the amount of money that will fairly compensate Plaintiff for certain intangible damages that you find he sustained as a direct result of the denial of his due process rights." Dkt. 259. The jury was instructed to consider the following types of compensatory damages: deprivation of society, deprivation of meaningful human contact and ease of communication, the loss of freedom of movement, lack of access to the law library, vocational program and job assignments, diminished quality of life. *Id. See also Isby-Israel v. Wynn*, No. 2:12-cv-116-JMS-MJD, at dkt. 274, p. 31-32 (awarding compensatory damages for these injuries). The jury unanimously agreed that Mr. Cherrone's compensatory damages were $387,500.00. *Id.*

In other words, but for limitations placed on prisoners under the Prison Litigation Reform Act, the jury would have awarded Mr. Cherrone compensatory damages in excess of the punitive damages award.

Defendants argue that the special interrogatory "does not bear on this inquiry." Dkt. 273. But the Court disagrees. The point of this guidepost is to consider the disparity between the harm suffered by the plaintiff and the punitive damages awarded. The fact that the Prison Litigation Reform Act prohibits a prisoner from bringing an action "for a mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ." 42 U.S.C. § 1997e(e), does not mean that Mr. Cherrone did not in fact suffer mental or emotional injuries. It just means that he cannot seek compensatory damages for these injuries given his status as a prisoner. The special interrogatory reflects the value the jury placed on the harm Mr. Cherrone suffered.

In this case, insisting on a punitive damages award proportioned to $1 in nominal damages would have a meager deterrent effect, would fail to signal to prison authorities that intentional

deprivations of civil rights will not be tolerated, and would not be commensurate with the moral gravity of Defendants' actions. *Cooper v. Casey*, 97 F.3d 914, 919–20 (7th Cir. 1996). Instead, the Court concludes that the measure of punishment reflected in the punitive damage awards assessed by the jury is both reasonable and proportionate to the amount of harm to the plaintiff as determined by the jury and thus is reasonable under these circumstances. *State Farm,* 538 U.S. at 425 ("In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426).

### C. Difference between Punitive Damages Awarded by the Jury and Civil Penalties Imposed in Comparable Cases.

The third guidepost that must be considered is the disparity between the punitive damages award and the "civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. 408, 428 (2003) (quoting *Gore*, 517 U.S. at 575).

Defendants argue that the punitive damages award in this case exceeds and duplicates a punitive damage award assessed in one other case in the Southern District of Indiana. Defendants explain that *Isby-Israel v. Brown et al*., No. 2:12-cv-116-JMS-MJD, found that Defendants denied plaintiff *Isby-Israel* due process by failing to provide periodic and meaningful review of his placement in administrative segregation. Dkt. 274. In December 2018, Isby-Israel was awarded $314,000.00 in compensatory damages, and punitive damages were assessed against Warden Richard Brown ($10,000), Director Jack Hendrix ($7,500), and Mr. Jerry Snyder ($5,000). *Id.* at dkt. 294 (Judgment). Defendants argue that the punitive damages in this case are grossly disproportionate to the punitive damage award in *Isby*. Further, Defendants assert that the punitive damages award covers a similar time period as the punitive damages award in this case, such that it is duplicative.

12

In response, Plaintiff argues that this case had far more egregious facts than *Isby*. This Court agrees. Mr. Isby was placed in solitary confinement after he "hit a unit counselor in the face" and "stabbed two correctional officers and killed the canine with a homemade weapon." *Isby*, No. 2:12-cv-116-JMS-MJD, Dkt. 274 at p. 3. As a result, he was convicted of two counts of attempted murder and battery. *Id.* Thereafter, he was consistently unpleasant and argumentative with the guards. In this case, the testimony was undisputed that Mr. Cherrone was always polite, respectful, and he showed remorse and a sincere desire to learn from his mistakes and improve as a person.

In addition, Defendants argue that the punitive damages claim in this case is duplicative to the claim in *Isby*. But each case stands on its own, and in the absence of any case law suggesting this is a basis for remitter, this argument is summarily rejected.

All three of the guideposts identified by the Supreme Court weigh in favor of affirming the punitive damages assessed by the jury. Accordingly, the punitive damages award does not violate due process.

## IV. Conclusion

Because the punitive damage award was supported by substantial evidence, was not excessive and does not violate due process, Defendants' Rule 50(b) and Rule 59 motions, dkts. [267] and [268], are **denied.**

**IT IS SO ORDERED.**

Date:  9/24/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ANDREW J. CHERRONE, JR.
994200
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

Anna C. Rutigliano
MARTIN HILD, P.A.
acr@martinhild.com

L. Rhyddid Watkins
MARTIN HILD, P.A.
lrw@martinhild.com