UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANDREW J. CHERRONE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00232-JRS-DLP |
| | ) | |
| JERRY SNYDER, | ) | |
| RANDALL PURCELL, | ) | |
| RICHARD BROWN, | ) | |
| FRANK LITTLEJOHN, | ) | |
| KEVIN GILLMORE, | ) | |
| | ) | |
| Defendants. | ) | |

**Order on Plaintiff's Motion for Bill of Costs and Motion for Attorney Fees**

A four-day jury trial was held in September 2020. The jury returned a complete verdict in favor of Plaintiff on his due process claim against each Defendant. The jury awarded $1.00 in compensatory damages; $120,000 in punitive damages against Defendant Brown; $60,000 in punitive damages against Defendant Snyder; $90,000 in punitive damages against Defendant Littlejohn; $30,000 in punitive damages against Defendant Purcell; and $10,000 in punitive damages against Defendant Gilmore. Final Judgment was entered in favor of Mr. Cherrone for a total of $310,001 in damages. The jury also awarded an additional $387,500 in compensatory damages pursuant to a Special Interrogatory that was not included in the Final Judgment.

After prevailing on all claims against all Defendants, Plaintiff now seeks costs and attorney fees pursuant to Fed. R. Civ. P. 54(d), 42 U.S.C. § 1988(b), and 1997e(d)(1).

For the reasons explained below, Plaintiff's motion for attorney fees and motion for bill of costs, dkts. [274] and [275], are **GRANTED** to the extent that attorney fees in the amount of

1

$**161,507.15**$ are awarded, with $77,500.25 reducing the judgment and the remaining $84,006.90 charged to Defendants. Costs are awarded in the amount of $4,994.71.

## I. Bill of Costs

There is no dispute that Plaintiff is entitled to $4,994.71 in costs. Dkt. 277. However, Plaintiff requests and Defendants oppose taxation of $1,704.52 as costs for mileage and $251.68 for telephone charges. Dkt. 276 at p. 1.

Defendants argue that travel expenses and telephone expenses are not listed in 28 U.S.C. § 1920 and therefore are not taxable as costs. Dkt. 276 at p. 2. In reply, Plaintiff argues that even if § 1920 does not provide for mileage and telephone charges, these costs should be awarded along with attorney fees as "related nontaxable expenses" pursuant to Rule 54(d)(2)(A) of the Federal Rules of Civil Procedure.

Plaintiff's position is not persuasive. It is true that "Rule 54(d) creates a presumption that the prevailing party will recover costs." *Crosby v. City of Chicago*, 949 F.3d 358, 363–64 (7th Cir. 2020) (quotation marks omitted); *Nwoke v. Univ. of Chicago Med. Ctr.*, No. 20-2242, 2021 WL 3483434, at *2 (7th Cir. Aug. 9, 2021). However, the Supreme Court has interpreted Rule 54(d) to provide for taxing only the costs already made taxable by statute—namely, 28 U.S.C. § 1920. *City of San Antonio, Texas v. Hotels.com, L.P.*, 141 S. Ct. 1628, 1636 (2021) (*citing Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–442 (1987)). In other words, Rule 54(d) works in tandem with § 1920 and "cannot be stretched beyond the parameters defined in section 1920" to encompass charges "unenumerated in [section 1920]." *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962, 978 (N.D. Ind. 2002) (quoting *In re San Juan Dupont Plaza Hotel Fire Litigation*, 994 F.2d 956, 964 (1st Cir. 1993)).

Accordingly, the motion for bill of costs, dkt. [275], is **GRANTED** to the extent that plaintiff is entitled to costs in the amount of **$4,994.71**.

## II. Attorney Fees

The Prison Litigation Reform Act ("PLRA") allows for recovery of attorney fees when a prisoner plaintiff is the prevailing party in a civil rights action, like this one, brought pursuant to 42 U.S.C. § 1983. 42 U.S.C. § 1997e(d); § 1988(b). Attorney fees awards in civil rights cases are designed "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (referencing fee awards under 42 U.S.C. § 1988) (internal quotation omitted). Section 1988 requires the fee award to be "reasonable." Determining what fees are reasonable is a "contextual and fact-specific" inquiry. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). District courts have a great deal of discretion with regard to assessing the reasonableness of the hours expended by counsel. *See Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007) ("'If ever there were a case for reviewing the determinations of a trial court under a highly deferential version of the "abuse of discretion" standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court.'") (quoting *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988)).

Plaintiff seeks $160,960.35 in attorney fees. Dkt. 274 at p. 5. Defendants agree that Plaintiff is entitled to attorney fees under the PLRA and do not dispute the hourly rates requested by the

3

plaintiff. Dkt. 276 at p. 3.[1] In addition, there is no dispute regarding $128,458.70 of the attorney fees requested.

There are, however, five categories of fees that the defendants dispute, totaling 147.1 hours for an amount of $32,491.65. It is these disputed fees that are discussed below.

*Travel to Indianapolis.*

Defendants argue that Plaintiff should not recover for the 47 hours counsel spent traveling to and from Indianapolis from Denver, Colorado, for trial. They argue that there has been no showing that in-state counsel was not available to represent Plaintiff or that the particular issues required out-of-state counsel. If travel time is permitted, Defendants ask that these fees be reduced to align with the time it would take to fly, closer to 2-3 hours each way, per attorney, for two attorneys.

Defendants' argument is not persuasive. As Plaintiff points out, attorney Anna Rutigliano was appointed pursuant to Local Rule 87 to work on this case while practicing law in Indianapolis. She was requested to remain on the case after she relocated to Denver, Colorado, and changed firms. Co-counsel Rhyddid Watkins was then appointed by the Court. It was the Court's preference that counsel remain on the case despite counsel's physical distance to the courthouse because transferring the case would have resulted in unnecessary delays to the Court's calendar. Further, transferring this case after a jury trial had become a near certainty would have resulted in more

---

[1] The hourly rates are capped at 150% of the rates set by 18 U.S.C. § 3006A. *See* 42 U.S.C. § 1997e(d). Subsection (d) of 3006A caps the hourly rate for appointed counsel at the Criminal Justice Act rates determined annually by the respective circuit courts. In 2019, the Seventh Circuit set the hourly rate at $148. This was increased to $152 per hour as of January 1, 2020. See Criminal Justice Act Hourly Rates of Compensation as imposed by Congress. Therefore, Plaintiff's allowable attorney fees are capped at $222 per hour for 2019, and $228 per hour for 2020. Plaintiff's allowable paralegal fees for 2019 are capped at $187.50 per hour. *See* http://www.ca7.uscourts.gov/criminal-justice-act/cjarates.htm (last visited September 15, 2021) (maximum hourly compensation rate is $152.00). Applying the statutory cap in this case discounted the incurred fees by 44% compared to the total applying counsel's ordinary market rate. Dkt. 274 at p. 5.

than 47 hours of additional preparation time by any newly appointed counsel (assuming such counsel was even available).

Finally, at the time of trial, COVID-19 was present in the community and vaccines were not yet available. Under these novel conditions, counsels' decision to travel 47 hours in a car instead of traveling on an airplane was a reasonable decision.

Based on these facts and circumstances, the Court concludes that the travel time was reasonable and necessary. Plaintiff is entitled to an award of attorney fees for all 47 hours in dispute for a total of **$10,716**.

*Paralegal Fees*

Next, Defendants seek to disallow 22.7 hours attributed to the work of Sarah Hebard. Defendants argue that Ms. Hebard's time should be excluded because she was not appointed as recruited counsel by the Court pursuant to Local Rule 87.

In response, Plaintiff explains that Ms. Hebard is a paralegal and that paralegal time is compensable under § 1988. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989) ("By encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes.") (internal quotations omitted).

The Court agrees that paralegal time is compensable under § 1988. Accordingly, Plaintiff is entitled to 22.7 hours of Ms. Hebard's time as requested, for a total of **$4,256.25**.

*Preliminary Injunction and Motion to Amend*

Defendants' third challenge to the request for attorney fees relates to 5.8 hours spent drafting a brief in support of a motion for preliminary injunction and 12.7 hours spent on a motion

5

to amend. The motion for preliminary injunction was not filed, and the motion to amend was denied. *See* dkt. 155 at p. 4. Defendants argue that the 18.5 hours spent on these two papers were unnecessary and unreasonable. Dkt. 276 at p. 5 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

In response, Plaintiff argues that *Hensley* does not support Defendants' assertion that specific motions or requests for relief that are ultimately unsuccessful are not compensable under § 1988.

The Plaintiff is correct. The Supreme Court explained, "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Spending 18.5 hours over the course of this litigation on a motion to amend that was not successful and a motion for preliminary injunction that was not filed is not unreasonable. In *Hensley,* the Supreme Court's focus was on whether "the expenditure of counsel's time was reasonable in relation to the success achieved." In this case, Plaintiff's success was total and counsel's expenditure of time was reasonable even if not every motion was granted.

Thus, Plaintiff is entitled to the 18.5 hours expended on the motion to amend that was denied and the brief in support of a preliminary injunction that was never filed, for a total of **$4,107**.

*Clerical Tasks*

Next, Defendants challenge specific attorney time entries totaling 37.9 hours on the basis that these entries reflect completion of clerical tasks. Dkt. 276 at p. 5 (citing *Spegon v. Cath. Bishop*

*of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (holding court should disallow hours expended by counsel on tasks that are easily delegable to non-professional assistance.)

Defendants challenge the following time entries.

| Date | Description | Hours |
|---|---|---|
| 10/11/19 | Coordinate transfer of files from Faegre Baker Daniels | 2.8 |
| 8/20/20 | Redact joint exhibits to comply with motions in limine | 2.5 |
| 8/20/20 | Organize and bates label joint trial exhibits | 3.1 |
| 8/22/20 | Continue stamping and redacting joint exhibits for trial | 2.5 |
| 8/24/20 | Create exhibit binder for use at trial | 2.1 |
| 8/24/20 | Create binder containing impeachment exhibits for use at trial | 3.1 |
| 8/25/20 | Finalize folder containing stamped and redacted exhibits and send to opposing counsel for review | 3.1 |
| 8/25/20 | Create witness binder for R. Brown outline | 1.8 |
| 8/27/20 | Print and organize trial exhibits | 3.1 |
| 8/27/20 | Print and organize copies of potential impeachment exhibits | 3.5 |
| 8/28/20 | Print and organize trial and cross examination binders | 4.1 |
| 8/28/20 | Finalize witness binders to include cross outlines and potential exhibits | 4.1 |
| 8/28/20 | Organize binders and supplies for trial | 2.1 |
| | Total | 37.9 |

Dkt. 276 at p. 5.

In response, Plaintiff argues that none of the time entries noted by Defendants were for clerical tasks or could have been delegated to a non-professional. Counsel represents that time spent calendaring, printing, copying, stapling, filing, etc., was excluded. In addition, Plaintiff provided additional details regarding each of these entries. Dkt. 277 at 6-7.

- The October 11, 2019, task for file coordination involved attorney judgment and analysis to ensure that the files were transferred in accordance with the professional rules of conduct and firm policy, and that they remained confidential. Counsel did not bill for the actual time spent downloading or foldering any documents.

- Entries relating to the joint witness list, exhibit redaction, and bates labeling on August 20, 2020 (both), August 22, 2020, and August 25, 2020, required attorney review. Plaintiff states that counsel for both parties agreed to work cooperatively to comply with this Court's

7

pre-trial orders in creating a joint exhibit list and creating the required exhibit binders for the Court and for the jury. Counsel agreed to split various tasks, with Mr. Cherrone's counsel agreeing to take on the task of creating the joint exhibit list, finalizing exhibits, and applying redactions. Creating the joint list and the final exhibits required weeding out duplicative exhibits and conferring with opposing counsel to discuss ordering, numbering, and disputed exhibits.

Plaintiff reports that counsel for both parties had lengthy discussions and negotiations on how to properly identify the exhibits, how they should be grouped, and what should be included in each exhibit.

Similarly, in determining what should be redacted, Counsel relied on her analysis of this Court's rulings on the motions *in limine*, a task that could not be delegated to a non-attorney. Mr. Cherrone's counsel provided proposed redactions to defense counsel for review. Numerous exchanges of emails and phone calls between counsel were required to discuss, negotiate, and ultimately agree on nearly all of the proposed redactions. Once the list was finalized and redactions applied, Mr. Cherrone's counsel again reviewed the work and conferred with opposing counsel to confirm the accuracy and reliability of the work product. As such, this was not a clerical task of delegating specific instructions on which sentences needed redacting; it was instead a complicated process of legal analysis and determination of which substantive portions of each exhibit needed redacting.

- The August 25, 2020, August 27, 2020, and August 28, 2020, entries involve the creation of binders, exhibits, and outlines for use at trial. These entries reflect, for example, the creation of a "witness binder for R. Brown outline." That task entailed the process of identifying relevant exhibits for use at trial, revising a cross-examination outline to refer to

      exhibits, drafting questions using the exhibits, and the determination of how the exhibits should be tied to the outline. Similarly, the creation of impeachment exhibit binders entailed counsel's identification of potential impeachment exhibits, incorporation into outlines, and determination of how those exhibits should be identified and provided to the Court and to opposing counsel. These entries do not include the time spent for related clerical tasks like hole-punching, foldering, labeling, etc.

Plaintiff's detailed explanation of the time entries challenged by Defendants reflects that the time indicated was appropriately billed by the attorney and that none of the tasks were delegable to non-professionals with one exception. The October 11, 2019, task for file coordination no doubt involved attorney judgment and analysis necessary to comply with the professional rules of conduct and firm policy. However, the opening and closing of a client matter is a cost of doing business that is not routinely assessed to the client. The 2.8 hours for this task shall not be included in the attorney fee. Thus, Plaintiff is entitled to attorney fees in the amount of **$8,002.80.**[2]

      *Waiting for the Verdict*.

      Plaintiff seeks to recover fees for 21 hours spent waiting for and hearing the jury verdict. Defendants object arguing that time spent waiting for the jury to return is not "directly and reasonably incurred in proving an actual violation of the plaintiff's rights," § 1997e(d), these hours should be reduced to encompass only the brief time spent hearing the jury verdict.

      In response, Plaintiff argues that attorney fees for time spent waiting on a verdict are appropriate where, under the circumstances, it would have been difficult for the attorney to work on another case. Dkt. 277; citing *Stragapede v. City of Evanston*, 215 F. Supp. 3d 708, 720

---

[2] This amount reflects a reduction in the amount Plaintiff requested, $8,624.40, by 2.8 attorney hours at a rate of $222 per hour or $621.6.

(N.D. Ill. 2016) (citing cases where courts declined to award fees for time spent awaiting jury's verdict, but finding fees were appropriate when it was unreasonably difficult to work on other matters). Plaintiff notes that the jury deliberated over the course of two days and that after the verdict was announced, the jury was again required to participate in further deliberation on a Special Interrogatory.

Plaintiff is correct that significant time was spent by counsel waiting on the jury. In addition, the attorneys were required to be in the Courtroom well before the jury arrived because Plaintiff was in custody such that additional accommodations were required. However, 21 hours in attorney fees for waiting strikes the court as unreasonable under the circumstances. *See Warfield v. City of Chi.*, 733 F.Supp.2d 950, 959–60 (N.D. Ill. 2010) ("The Court will also deduct 9 hours of time spent 'waiting for the verdict' from Thompson's billed hours as these hours were not 'reasonably expended.'"). Accordingly, this request is cut in half to **$2,394.00,** which represents 10.5 total hours or 5.25 hours of waiting by each of Plaintiff's attorneys.

*Additional Fees Incurred.*

Plaintiff has incurred additional fees after his motion was filed. These attorney fees are documented and reasonable. Dkt. 277 at p. 8−9. Accordingly, Plaintiff is entitled to additional fees in the amount of **$3,032.40**.

In summary, Plaintiff is entitled to attorney fees in the amount of **$161,507.15**. Section 1997e(d) permits an award of fees as long as it does not exceed "150 percent of the judgment." In this case, Plaintiff's fees do not exceed the judgment.

### III. Apportionment of Fees

For the reasons explained above, attorney fees in the amount of **$161,507.15** are appropriate in this case. Pursuant to the PLRA, Plaintiff Andrew Cherrone is responsible for

paying a portion of the attorney fee award up to 25% of his judgment. The judgment was $310,001, so 25% of the judgment is $77,500.25. This amount reflects Plaintiff's required contribution towards his attorney fees. The remaining $84,006.90 is charged to Defendants.

### IV. Conclusion

Plaintiff's motion for attorney fees and motion for bill of costs, dkts. [274] and [275], are **GRANTED** to the extent that attorney fees in the amount of $**161,507.15** are awarded, with $77,500.25 reducing the judgment and the remaining $84,006.90 charged to Defendants.

Costs are awarded in the amount of $4,994.71.

IT IS SO ORDERED.

Date: 9/24/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ANDREW J. CHERRONE, JR.
994200
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

Anna C. Rutigliano
MARTIN HILD, P.A.
acr@martinhild.com

L. Rhyddid Watkins
MARTIN HILD, P.A.
lrw@martinhild.com